UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

RICHARD JUSTIN RIVERA,

       CASE NO.: 2:21-cv-14302-DPG

    Plaintiff,

v.

ROSEMARY JONES-CHAMBLISS
and GARY R. SILVERMAN, MD,

    Defendants.
_____/

## DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

Defendants, ROSEMARY JONES-CHAMBLISS and GARY R. SILVERMAN, MD, by and through their undersigned attorneys, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, hereby file this Motion for Final Summary Judgment, and as grounds therefore would state as follows:

    1.    The operative complaint asserts one count of deliberate indifference to serious medical needs against Defendants Rosemary Jones Chambliss, LPN, and Dr. Gary Silverman, under 42 U.S.C. Section 1983. The allegations stem from the medical care Plaintiff received during his incarceration at the Indian River County Jail between October 2019 through May 2021. (See DE 42-1).

    2.    Based upon the pleadings as well as the deposition transcript and exhibits filed contemporaneously herewith, the undisputed facts establish that the Defendants are entitled to summary judgment as a matter of law.

WHEREFORE, Defendants respectfully request that this Honorable Court enter final summary judgment in their favor. FURTHER, and in support of this Motion, the Defendants would refer this Honorable Court to the Memorandum of Law attached hereto and by reference made a part hereof.

## MEMORANDUM OF LAW

### I. Standard of Review

At the summary judgment stage, courts construe the facts in the light most favorable to the non-movant, and any doubts should be resolved against the moving party. Davis v. Williams, 451 F.3d 759, 761 (11th Cir. 2006); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment is appropriate when the record evidence shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden to identify any portions of the pleadings, depositions, answers to interrogatories, and affidavits demonstrating the absence of a genuine issue of material fact. Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir. 2012). The burden then shifts to the nonmoving party to rebut that showing by producing relevant and admissible evidence beyond the pleadings. Id. The nonmoving party cannot satisfy its burden with evidence that is "merely colorable, or is not significantly probative of a disputed fact." Id. (quotation marks omitted). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990). Likewise, "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit

or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." Solliday v. Fed. Officers, 413 F. App'x 206, 207 (11th Cir. 2011) (citing Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

Where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L.Ed. 2d 686 (2007); see also Logan v. Smith, 439 Fed.Appx. 798, 800 (11th Cir. 2011). Medical records are evidence that can "blatantly contradict" a nonmovant's version of the facts. See, e.g., Sumlin v. Lampley-Copeland, 757 F. App'x 862, 867 (11th Cir. 2018); Whitehead v. Burnside, 403 F. App'x 401, 403 (11th Cir. 2010) ("Although [the plaintiff] attempts to overcome summary judgment by offering his own sworn statements ... to support his allegations, the contemporaneous medical records and opinions of the examining medical doctors show that this purported evidence is baseless.").

## II.  Deliberate Indifference to Serious Medical Needs

a. Law on Deliberate Indifference to Serious Medical Needs[1]

There is an "obligation to provide medical care for those who are incarcerated whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). Delayed or denied access to medical care for inmates resulting in physical or mental injury constitutes a violation of constitutional rights. Id. To state such a claim, a plaintiff must allege facts that plausibly show: (1) the plaintiff had a serious medical need; (2) the defendant was deliberately indifferent to that need;

---

[1] The Fourteenth Amendment secures the rights of pretrial detainees. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306 (11th Cir.2009) (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983)). Under our precedent, we evaluate a pretrial detainee's claim of deliberate indifference to his medical needs as if it were brought under the Eighth Amendment. Id. (citing Hamm v. DeKalb Cnty., 774 F.2d 1567, 1574 (11th Cir. 1985)); Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010).

and (3) there is a causal connection between that indifference and the plaintiff's injury. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009).

Claims for deliberate indifference to serious medical needs contain both an objective and a subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). A prisoner must prove "an objectively serious need, an objectively insufficient response to that need, a subjective awareness of facts signaling the need, and an actual interference of required action from those facts." Turner v. Sec'y, Dep't of Corr., 161 F. App'x 848, 849 (11th Cir. 2006) (quoting Taylor, 221 F.3d at 1258). A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (overruled on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002)).

The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. Id. at 835-36. The Eleventh Circuit has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence." For instance, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th Cir. 1997) (overruled on other grounds by LeFrere v. Quezada, 588 F.3d 1317, 1318 (11th Cir. 2009)). The "deliberate indifference" standard may be met in instances where a prisoner is subjected to repeated examples of delayed, denied, or grossly incompetent or inadequate medical care; prison personnel fail to respond to a known medical problem; or prison

4

doctors take the easier and less efficacious route in treating an inmate. See, e.g., Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating failure to respond to known medical problems or to take a less efficacious course of treatment can amount to deliberate indifference). "To establish deliberate indifference, the defendant must: (1) have subjective knowledge of a risk of serious harm; (2) disregard the risk; and (3) display conduct beyond mere negligence." Shaw v. Allen, 701 F. App'x 891, 893 (11th Cir. 2017) (citation omitted)). The medical care must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986). Deliberate indifference is about "obduracy and wantonness, not inadvertence or error in good faith." Whitley v. Albers, 475 U.S. 312, 319 (1986). "It is the equivalent of recklessly disregarding a substantial risk of serious harm to the inmate." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996) (quotation marks omitted); Mann v. Sec'y, Dep't of Corr., No. 21-11445, 2021 WL 5112647, at *2 (11th Cir. Nov. 3, 2021) (unreported). The inadvertent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 105-06. See also Wilson, 501 U.S. at 297-98. This is a difficult standard to meet.

Moreover, federal courts have held that inmates are not entitled to their choice of medical care. See Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop, 871 F.2d at 1033 ("'[A] simple difference in medical opinion' does not constitute deliberate indifference.")); Bowring v. Godwin, 551 F.2d 44 (4th Cir. 1977) (courts will not "attempt to second guess the propriety or adequacy of a particular course of treatment."); Hammonds v. Theakston, 833 F. App'x 295, 301 (11th Cir. 2020), cert. denied sub nom. Hammonds, Stephen V. Theakston, Robert, Et Al., No. 20-1402, 2021 WL 4507658 (U.S. Oct. 4, 2021) (jail officials are not required to provide a detainee with the precise treatment the detainee requests).

To the extent the Plaintiff contends that there was a delay in his diagnosis and thus, his treatment, the Eleventh Circuit has held:

> An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further ... the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188-89 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002).

Furthermore, to show deliberate indifference, a plaintiff must produce evidence that each named defendant knew about the plaintiff's serious medical needs and intentionally failed or refused to provide adequate medical care. McElligott v. Foley, 182 F. 3d 1248, 1255 (11th Cir. 1999). Each named defendant "must be judged separately and on the basis of what that person kn[ew]" (Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008)), and not on the medical outcome of a prescribed course of treatment (see, e.g., Bass v. Sullivan, 550 F.2d 229, 231–32 (11th Cir. 1977) (even though the prisoner plaintiff ultimately lost his legs to gangrene, the defendant doctor's treatment was not deliberately indifferent)).

For purposes of this Motion, the Defendants concede that Plaintiff's condition constitutes a serious medical need. Rather, the dispute hinges on the subjective component. Specifically, the Defendants contend that they were not deliberately indifferent to Plaintiff's serious medical need.

 b. Defendants were not Deliberately Indifferent to Plaintiff's Serious Medical Need

  i. Dr. Silverman

Plaintiff has not presented any evidence which would suggest that Dr. Silverman was deliberately indifferent to Plaintiff's serious medical needs between October 2019 through May

6

2021.[2] The evidence demonstrates that Plaintiff first requested to see Dr. Silverman on January 14, 2020, via a medical request, and that he was evaluated by Dr. Silverman the same day. (Composite Exh. C, pgs. 15-16). During the examination Plaintiff complained of watery stool and diarrhea for the past month. (Id.). Medical records reflect that the Plaintiff was not experiencing vomiting or stomach issues, his weight was stable and his appetite was normal. (Id.). Plaintiff had no known gastrointestinal issues other than heartburn and no known family history of gastrointestinal issues. (Id.). Plaintiff was taking Claritin, Reguloid (fiber) and Pepcid. (Id.). Dr. Silverman also performed a rectal examination. (Id.). He did not find external hemorrhoids but could not rule out internal hemorrhoids. (Exh. F). Dr. Silverman's plan was to perform lab work including a complete metabolic profile and sedimentation rate and to then discuss further treatment. (Exh. C, pgs. 15-16).

The second examination by Dr. Silverman occurred on February 11, 2020, during which time the Plaintiff complained of blood in his stool and loose stool. (Exh. C, pg. 21). Plaintiff advised that Imodium provided some relief. (Id.). Medical records reflect that Plaintiff's weight was stable, he was not vomiting and his appetite was normal. (Id.). Dr. Silverman ordered additional lab work (CBC re-check). (Id.). Dr. Silverman also discussed the Jail's procedure for seeing an outside physician with Plaintiff. (Id.). Approximately one-week later Dr. Silverman reviewed Plaintiff's labs and noted that Plaintiff's blood count had dropped. (Exh. C, pg. 22). Thus, he recommended a consultation with an outside specialist, Dr. Lui. (Id.). An appointment was immediately scheduled with Dr. Lui. In fact, the Plaintiff was seen by Dr. Lui on March 3, 2020,

---

[2] The doctrine of respondeat superior does not apply to claims arising under § 1983. Engelleiter v. Brevard County Sheriff's Dept., 290 F.Supp.2d 1300, 1308 (M.D. Fla. 2003). Therefore, Plaintiff must establish that Dr. Silverman was himself deliberately indifferent to Plaintiff's serious medical needs, not simply that the employees he may have supervised were deliberately indifferent.

and again on April 10, 2020, during which time a colonoscopy was performed. (Exh. G, pgs. 1-6). The results of the colonoscopy revealed Plaintiff had chronic proctitis. (Id.).

Plaintiff complains that he was not immediately referred to an outside specialist by Dr. Silverman. However, only a little over one month elapsed between the time the Plaintiff was first examined by Dr. Silverman and when Dr. Silverman referred him to an outside specialist. In that one-month period, Dr. Silverman ordered lab work and monitored the Plaintiff's progress. Once his blood count dropped, he referred him to a specialist. (Exh. C, pgs. 21-22). Although Plaintiff did not physically see Dr. Silverman again until May of 2021, records reflect that he was being treated by Dr. Lui and jail medical staff, and that his medical condition was controlled. (See Composite Exh. C, Exh. G). Indeed, medical records demonstrate that each time the Plaintiff was examined by Dr. Lui and Dr. Silverman, he reported no abdominal pain, no vomiting, no fever, and that his weight and appetite were stable. (Exh. C, pgs. 16, 21, 22, 44; Exh. G).

Plaintiff also complains that his proctitis flared up around April of 2021 and he did not immediately see Dr. Lui nor did he receive sufficient treatment. (DE 42-1, pg. 20-21). However, the medical request submitted in April of 2021 was not directed to Dr. Silverman nor is there any evidence Dr. Silverman saw the medical request. (Exh. C, pg. 42). In addition, on April 20, 2021, Dr. Silverman ordered labs to be drawn. (Exh. D, pg. 3). Plaintiff submitted a medical request on May 2, 2021, complaining about his proctitis and he was evaluated by Dr. Silverman two days later on May 4, 2021. (Exh. C, pg. 44). Medical records reflect that Plaintiff's appetite and weight were stable and he had no abdominal pain or fever. (Id.). Dr. Silverman ordered additional labs and increased the colitis medication to three tablets per day. (Id.). Dr. Silverman's plan was to take daily vitals for one week and to discuss progress at that time. (Id.). Moreover, Plaintiff was advised

by medical staff on May 21, 2021, that an appointment was scheduled with Dr. Lui. (Exh. C, pgs. 48-49). Plaintiff was seen by Dr. Lui on June 6, 2021. (Exh. G),

The Plaintiff further asserts that that Defendants were deliberately indifferent to his serious medical needs when they decreased the medication prescribed by Dr. Lui during his March 2020 visit. However, by the time the Plaintiff next saw Dr. Lui, on June 3, 2020, medical records reflect that he was doing well. (Exh. G, pgs. 7-9). Specifically, his rectal bleeding resolved two weeks prior and he currently had regular formed bowel movements. (Id.). Plaintiff's appetite and weight were stable. (Id.). Plaintiff advised that he took Lialda (4 tablets) for 3 weeks but that 2 weeks prior, it was decreased to 2 tablets per day. (Id.). Lui's plan was to continue on the current regimen and to follow up in 6 months. (Id.).

Here, the evidence of record does not demonstrate that Dr. Silverman provided medical care that was inadequate or constitutionally deficient. At most, his decision to reduce prescribed medication or to monitor Plaintiff for one month before referring him to an outside specialist demonstrates possible negligence which does not establish a constitutional violation. See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (Where an inmate receives adequate medical care, but desires different modes of treatment, the care provided does not amount to deliberate indifference.); see also Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment."); Monteleone v. Corizon, 686 F. App'x 655, 659–60 (11th Cir. 2017) (citing Harris v. Coweta Cty., 21 F.3d 388, 393 (11th Cir. 1994) (reasoning that "[a]ccidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner' "). See also Taylor v. Adams, 221 F.3d 1254,

1259 (11th Cir. 2000) (explaining that violations of professional standards are only a "starting point for [an] analysis that requires much more than negligence or malpractice"); see, e.g., Estelle, 429 U.S. at 107, 97 S.Ct. 285 (explaining that a dispute over medical judgment is not enough to establish a constitutional violation). And as it relates to medication, determining which medication or how much medication to prescribe is generally a matter of medical judgment. See Monteleone v. Corizon, 686 F. App'x 655, 659–60 (11th Cir. 2017); Wright v. Langford, 562 Fed.Appx. 769, 779 (11th Cir. 2014) (inmate's claim that he should have received some other form of pain medication did not state an Eighth Amendment deliberate indifference claim because a doctor's choice of treatment is generally a matter of medical judgment).

In sum, Dr. Silverman provided ongoing care to Plaintiff during his incarceration. Any contentions about the type of medication or treatment he received amounted to complaints about Dr. Silverman's exercise of medical judgment, which do not rise to the level of deliberate indifference. See Hernandez v. Sec'y Fla. Dep't of Corr., 611 F. App'x 582, 584 (11th Cir. 2015).

ii. Nurse Jones Chambliss

Nurse Jones Chambliss was the Director of Nursing from March 11, 2019 through April 30, 2021. However, "[s]upervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (quotation omitted). Under § 1983, liability attaches to a supervisor only if the supervisor personally participated in the events, or if there is a causal connection between the action of the supervising official and the alleged constitutional deprivation. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). Here, the operative complaint asserts that Nurse Jones Chambliss personally participated in the events which are the subject of this lawsuit.

10

The evidence demonstrates that Nurse Jones Chambliss first responded to a medical request regarding Plaintiff's gastrointestinal issues on December 3, 2019. (Exh. C, pg. 9). She then responded to a medical request submitted by Plaintiff on December 10, 2019, wherein he complained that his diarrhea had returned. (Exh. C, pg. 10). In this response, she advised Plaintiff that he needed to continue taking Metamucil. (Id.). On December 12, 2019, Nurse Jones Chambliss evaluated the Plaintiff regarding his gastrointestinal issues as well as his complaints regarding issues with his urine. (Exh. D, pg. 8). Nurse Jones Chambliss ordered a urine culture and restarted Plaintiff on fiber due to his gastrointestinal complaints. (Id.). One week later, Plaintiff submitted a medical request regarding his diarrhea. (Exh. C, pg. 8). The following day, Nurse Jones Chambliss responded to the request and advised Plaintiff to continue taking the fiber supplement and to increase his fluid intake. (Id.). In addition, she placed him on Imodium for two (2) days. (Id.). Despite being placed on the Jail's protocol for his complaints, Plaintiff testified during his deposition that he was not taking the Imodium as prescribed. (Exh E, pg. 15/lns. 11-24).

Then, on January 13, 2020, Nurse Jones Chambliss conducted a follow-up examination with Plaintiff regarding his gastrointestinal issues. (Exh. D, pgs. 7-8). Plaintiff advised that he continued to pass gas with bright red stool but advised that his loose stools were better. (Id.). During the examination, Nurse Jones Chambliss instructed the jail deputy to exit the room and inquired as to whether the Plaintiff was involved in homosexual activity due to the nature of his complaints. (Exh. E, pg. 17/lns. 5-22). Plaintiff denied this behavior. (Id.) Thus, any assertion by Plaintiff that Nurse Jones Chambliss should have reported the alleged homosexual behavior to supervisors is irrelevant because Plaintiff denied such behavior. (DE 42-1, pg. 18). Moreover, Plaintiff's claim that Nurse Jones Chambliss failed to provide medical care because she believed he was engaged in homosexual behavior is not supported by the record evidence. Moreover, as

shown below, Plaintiff was examined by Dr. Silverman the very next day and Nurse Jones Chambliss continued to care for Plaintiff during his incarceration. (Exh. C, pg. 16).

On January 14, 2020, Plaintiff submitted a medical request asking to be placed on the list to see the Jail's physician regarding blood in his stool. (Exh. C, pg. 15). Plaintiff was seen that day by Dr. Silverman during which time a rectal examination was performed. (Exh. C, pg. 16). Dr. Silverman's plan was to perform lab work including a complete metabolic profile and sedimentation rate and to then discuss further treatment. (Exh. C, pg. 16). Between February 10 - 11, 2020, the Plaintiff submitted medical requests demanding to see an outside specialist for his gastrointestinal issues. (Exh. C, pgs. 19-20). Records demonstrate that this was the first-time that Plaintiff requested an outside physician. On February 11, 2020, Plaintiff was examined by Dr. Silverman. (Exh. C, pg. 21). Medical records reflect that Plaintiff's weight was stable, he was not vomiting and his appetite was normal. (Id.) Dr. Silverman ordered lab work (CBC re-check). (Exh. C, pg. 21). Plaintiff's lab work was reviewed by Dr. Silverman on February 18, 2020. (Exh. C, pg. 22). Because Dr. Silverman observed that Plaintiff's blood count dropped, he recommended a consultation with an outside specialist, Dr. Lui. (Exh. C, pg. 22).

The evidence demonstrates that Nurse Jones Chambliss arranged a consultation with Dr. Lui for March 3, 2020, based on Dr. Silverman's referral. (Exh. C, pg. 22). When Plaintiff saw Dr. Lui on March 3, 2020, he reported no abdominal pain, melena, constipation, fever, chills, vomiting or nausea. (Exh. G, pgs. 1-3). Further, Plaintiff reported that his appetite and weight were stable. (Id.). On March 18, 2020, Nurse Jones Chambliss responded to Plaintiff's medical request and advised him that he currently had an appointment scheduled with Dr. Lui and there would be several more scheduled. (Exh. C, pg. 24). On March 26, 2020, Nurse Jones Chambliss spoke to Dr. Lui's office and a colonoscopy was scheduled for April 10, 2020. (Exh. C, pg. 26). On April

10, 2020, Plaintiff was transported to Dr. Lui's office where a colonoscopy was performed. (Exh. G, pgs. 4-6). The colonoscopy demonstrated that Plaintiff had chronic proctitis. (Id.).

On April 24, 2020, Nurse Jones Chambliss saw Plaintiff during a sick call visit regarding his medical records and prescribed medication. (Exh. D, pgs. 4-5). On June 3, 2020, Plaintiff was examined by Dr. Lui for a three-month follow up after his colonoscopy. (Exh. G, pgs. 7-9). Records reflect that he was doing well, his rectal bleeding resolved two weeks prior and he currently had regular formed bowel movements. (Id.). Plaintiff's appetite and weight were stable. (Id.). Dr. Lui's plan was to continue on the current regimen and to follow up in six months. (Id.). On June 24, 2020, Nurse Jones Chambliss received new orders from Dr. Lui regarding an iron supplement and additional labs to be drawn on July 22, 2020. (Exh. C, pg. 32). On July 27, 2020, Nurse Jones Chambliss reviewed Plaintiff's labs and noted that Plaintiff's iron and saturation were elevated, and his Ferritin was low. (Exh. C, pg. 34). She then discussed the labs results with Dr. Silverman. (Id.). Based on the lab results, Dr. Silverman discontinued the iron supplement. (Id.).

On November 23, 2020, Nurse Jones Chambliss scheduled Plaintiff's six-month follow-up appointment with Dr. Lui. (Exh. C, pg. 37). On December 15, 2020, Plaintiff was seen by Dr. Lui for a follow-up. (Exh. G, pgs. 10-12). Medical records reflect that Plaintiff was doing well on his regimen of Lilalda and a high fiber diet. (Id.). His bowel pattern was normal. (Id.). Plaintiff had no abdominal pain, nausea, vomiting, fever, anorexia or weight loss. (Id.). Plaintiff reported that his heartburn was controlled with Prilosec. (Id.). Dr. Lui ordered a follow up in one year. (Exh. G, pgs. 10-12; Exh. D, pg. 4). One week later, Nurse Jones Chambliss reviewed Plaintiff's labs and noted that Plaintiff's iron was low. (Exh. C, pg. 38). She then discussed the labs results with Dr. Silverman and faxed the lab results to Dr. Lui. (Id.). The iron supplement was reordered as well as a Vitamin C supplement. (Id.). It does not appear that Nurse Jones Chambliss had much

involvement in Plaintiff's medical care after this date other than responding to a medical request dated April 7, 2021, wherein she advised Plaintiff that Dr. Silverman ordered labs and would follow up as needed. (Exh. C, pg. 42). However, medical records demonstrate that the Plaintiff received medical care for many issues, including his gastrointestinal issues until he was transferred to the Florida Department of Corrections in 2022. (Exh. C, generally; Exh. G).[3]

The exhibits attached hereto document ongoing attempts by medical staff at the Jail to diagnose and treat Plaintiff's conditions. As it pertains to Nurse Jones Chambliss, beginning in December of 2019, she responded to Plaintiff's medical requests; examined him on several occasions; ordered lab work multiple times; ordered medications including Imodium, Fiber Reguloid, Vitamin C, iron supplements and Pepcid; ordered urine cultures; advised Plaintiff of his lab results; placed him on a high-fiber diet; conferred with Dr. Silverman and Dr. Lui regarding Plaintiff's lab results; and scheduled his appointments with Dr. Lui once referred by Dr. Silverman. (Exh. C, generally). Moreover, the exhibits attached hereto demonstrate that Plaintiff received medical care by Dr. Silverman, Dr. Lui and other jail medical staff including x-rays, colonoscopy and ultrasounds. (Exh. C, generally). Although the Plaintiff claims that Nurse Jones Chambliss accused him of being involved in homosexual behavior and refused to provide medical treatment, that claim is belied by the medical records attached hereto.

Here, there is no evidence that the medical care provided by Nurse Jones Chambliss was constitutionally deficient. This treatment, while perhaps different from (and less than) what Plaintiff preferred, is sufficient to clear the low deliberate-indifference bar. Moreover, any delay in placing Plaintiff in the medical unit in December of 2019 to observe his stool, to the extent it can even be attributed to Nurse Jones Chambliss, demonstrates negligence, not deliberate

---

[3] Although Nurse Jones Chambliss was the Director of Nursing, she did not review every medical request submitted by inmates.

indifference. Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1277–78 (11th Cir. 2020), cert. denied sub nom. Keohane v. Inch, 142 S. Ct. 81 (2021). See also Hinson v. Edmond, 192 F.3d 1342, 1345 (11th Cir. 1999) (noting that it is well-settled that "medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference"), amended by 205 F.3d 1264 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (noting that "[m]ere negligence in diagnosing or treating a medical condition is an insufficient basis" for a deliberate indifference claim). Nor does a simple disagreement over a diagnosis or course of treatment constitute deliberate indifference. As long as the medical treatment provided is "minimally adequate," a prisoner's preference for a different treatment does not give rise to a constitutional claim. See Harris v. Thigpen, 941 F.2d 1495, 1504–05 (11th Cir. 1991); see also Adams, 61 F.3d at 1547 (concluding that the medical provider's "failure to administer stronger medication" to a prisoner who subsequently died was "a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983").

In sum, based on the actual medical care Nurse Jones Chambliss was involved in, it cannot be said that she was deliberately indifferent to Plaintiff's medical care.

   iii.  Zantac Complaints

Although Plaintiff asserts that he requested to be taken off Zantac in October of 2019, the evidence in this case negates his assertion. Indeed, medical records demonstrate that Plaintiff actually complained via medical requests that he was not given his second dose of Zantac at night. (Exh. C, pgs. 1-5).

   iv. Worsening of Condition

To the extent Plaintiff is claiming that his condition was worsened by a delay in referring him to an outside specialist, Plaintiff cannot establish any worsening of his condition, nor any

permanent injury that can be traced to a failure to refer him to an outside specialist sooner. Thus, there is nothing in the record to indicate that any delay on the part of either Defendant was detrimental to Plaintiff's condition, nor that the delay was a result of deliberate indifference.

### III. Qualified Immunity

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). It is designed to permit officials to perform their discretionary duties "without the fear of personal liability or harassing litigation." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). The doctrine therefore "protect[s] from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.' " Id. (quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001), vacated 537 U.S. 801, 123 S.Ct. 68, 154 L.Ed.2d 2 (2002).

A "public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred' " to receive the benefit of qualified immunity. Lee, 284 F.3d at 1194 (quoting Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991). The term "discretionary authority" "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Patel v. City of Madison, Alabama, 959 F.3d 1330, 1338 (11th Cir. 2020) (citing Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted)); see also Nam Dang by & through Vina Dang v. Sheriff, Seminole Cnty. Fla., 871 F.3d 1272, 1279 (11th Cir. 2017). Here, Nurse Jones Chambliss, LPN, was the director of nursing at the Jail. Dr. Silverman was the Jail's physician. It cannot be reasonably disputed that during their interactions with

Plaintiff, their actions were taken pursuant to the performance of their duties and within the scope of their authority as medical providers at the Indian River County Jail. See Nam Dang by & through Vina Dang v. Sheriff, Seminole Cnty. Fla., 871 F.3d 1272, 1279 (11th Cir. 2017) ("All of the health care providers acted within the course and scope of their discretionary authority in providing care to Dang.").

Courts must determine whether a "reasonable official" would understand that what she was doing violated the right in question. Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) (quotation omitted). A plaintiff may establish that the law clearly established in any of three ways. First, a plaintiff may "point to a materially similar case [that has] already decided that what the police officer was doing was unlawful." Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002) (citation and quotation marks omitted and alteration in original). Second, if the plaintiff cannot find a materially similar factual case from the Supreme Court, our Court, or, in this case, the Supreme Court of Florida, a plaintiff can "show that a broader, clearly established principle should control the novel facts in this situation." Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005). Third, a plaintiff may rely on the "obvious clarity" path, which applies when "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 926 (11th Cir. 2000) (citation and quotation marks omitted). Under this test, the law is clearly established and qualified immunity can be overcome only if the standards set forth in relevant precedent "inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful." Id. at 926–27 (citation and quotation marks omitted). In all three methods, the " 'salient question' is whether the state of the law at the time of the incident gave [the officer] 'fair warning' that his conduct was

unlawful." Perez v. Suszczynski, 809 F.3d 1213, 1222 (11th Cir. 2016) (quoting Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Notwithstanding the availability of these three independent showings, the Eleventh Circuit has observed on several occasions that "if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Corbitt v. Vickers, 929 F.3d 1304, 1312 (11th Cir. 2019) (citing Oliver v. Fiorino, 586 F.3d 898, 907 (11th Cir. 2009) and Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).

Because Defendants acted within their discretionary authority when providing medical care to Plaintiff, the burden shifts to the Plaintiff to show that qualified immunity is not appropriate. Thus, Plaintiff must establish that Defendants are not entitled to qualified immunity by showing that these medical Defendants violated his constitutional right and that the constitutional right was clearly established at the time of this incident. See Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008).

## CONCLUSION

Consequently, there are no facts upon which a jury could conclude that these Defendants were deliberately indifferent to Plaintiff's serious medical needs during his incarceration in the Indian River County Jail. Moreover, to the extent there is a dispute of fact regarding the above, the Defendants are entitled to qualified immunity as the unconstitutionality of their actions was not clearly established.

Respectfully Submitted,

        */s/ Christy M. Imparato*
        CHRISTY M. IMPARATO, ESQUIRE
        Fla. Bar No. 0084631
        PURDY, JOLLY, GIUFFREDA, BARRANCO & JISA, P.A.
        2455 E. Sunrise Boulevard, Suite 1216
        Fort Lauderdale, Florida 33304
        Telephone:   (954) 462-3200
        Facsimile:   (954) 462-3861
        e-mail: christy@purdylaw.com; patty@purdylaw.com
        Attorney for *Defendants*
        Trial Counsel

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I have electronically filed a copy of the forgoing with the Clerk of the Court by using the CM/ECF system and a copy of the foregoing has been furnished by U.S. Mail to Pro Se Plaintiff, Richard Justin Rivera, ID # E10529, Jackson Correctional Institution, 5563 10th Street, Malone, Florida 32445, this **12th** day of September, 2022.

        */s/ Christy M. Imparato*
        CHRISTY M. IMPARATO, ESQUIRE
        Fla. Bar No. 84631
        PURDY, JOLLY, GIUFFREDA, BARRANCO & JISA, P.A.
        2455 E. Sunrise Boulevard, Suite 1216
        Fort Lauderdale, Florida  33304
        Telephone:   (954) 462-3200
        Facsimile:   (954) 462-3861
        E-mail: Christy@purdylaw.com; Patty@purdylaw.com
        Attorney for *Defendants*