UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:21-cv-14302-GAYLES/REINHART

**RICHARD JUSTIN RIVERA**,

    Plaintiff,

v.

**ROSEMARY JONES-CHAMBLISS**, *et al*.,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court on Defendants' Motion for Summary Judgment ("Motion") [ECF No. 77]. The Court has reviewed the Motion, the record, arguments of the parties, and is otherwise fully advised. For the reasons that follow, Defendants' Motion is **GRANTED**.

## BACKGROUND

### I. Factual Background[1]

This case arises from medical treatment that Plaintiff received as pretrial detainee at the Indian River County Jail ("the Jail") between October 2019 and May 2021. In October 2019, Plaintiff submitted a medical request complaining of pain in his stomach. [ECF No. 76 ¶ 3]. In November 2019, Plaintiff began complaining of diarrhea. *Id*. ¶¶ 4–6. The nursing staff prescribed him Imodium and fiber. *Id*. In December 2019, Plaintiff began complaining of blood in his stool along with continued stomach pain. *Id*. ¶ 8. On December 4, 2019, Defendant Nurse Rosemary

---

[1] The facts relevant to Defendants' Motion are undisputed unless otherwise indicated and are taken from the following statements of facts along with their accompanying exhibits: Defendants' Statement of Material Facts [ECF No. 76]; Plaintiff's Statement of Material Facts in Opposition [ECF No. 86]; and Defendants' Reply Statement of Material Facts [ECF No. 97].

Jones Chambliss, then the Director of Nursing at the Jail, advised Plaintiff that the medical staff would take a stool sample and place him in observation. *Id*. Plaintiff was not placed in observation at that time, however. Pl.'s Ex. J, [ECF No. 87 at 125 ¶ 3]. Jones Chambliss also asked Plaintiff why he was not taking his fiber supplement twice per day as prescribed, and Plaintiff said that it caused him to urinate too frequently. [ECF No. 76 ¶¶ 8–9].

On December 10, 2019, Plaintiff submitted a medical request stating that despite the treatment, he continued to experience diarrhea and stomach pain, as well as a light pain when holding his bladder. *Id*. ¶ 10. On December 12, 2019, Nurse Jones Chambliss responded to the request and advised Plaintiff that he would need to take Metamucil for more than six days for it to work. *Id*. She restarted Plaintiff on a fiber regimen and ordered a urine culture. *Id*. Plaintiff continued to submit medical requests complaining of diarrhea throughout December 2019. *Id*. ¶¶ 14–16.

On January 13, 2020, Nurse Jones Chambliss saw Plaintiff for a follow-up examination. *Id*. ¶ 18. During the visit, she asked Plaintiff if he was engaging in homosexual activity due to the nature of his complaints and rumors at the Jail. *Id*. ¶ 19. Plaintiff was offended by the question and filed an internal affairs complaint against Jones Chambliss. *Id*.

On January 14, 2020, Plaintiff requested, for the first time, to see the Jail's physician (although he had assumed his prior medical requests would result in a doctor's appointment). *Id*. ¶ 20; [ECF No. 86 ¶¶ 11–12]. Plaintiff was seen by Defendant Dr. Gary Silverman the same day. [ECF No. 76 ¶ 21]. Dr. Silverman's notes state that he performed a rectal examination of Plaintiff during this visit, but Plaintiff disputes this, claiming that Dr. Silverman did not perform this exam until the next appointment one month later. Def.'s Ex. C, [ECF No. 76-3 at 16]; [ECF No. 86 ¶ 13]. Dr. Silverman advised Plaintiff that the plan was to order lab work including a complete

metabolic profile and sedimentation rate and then discuss further treatment. [ECF No. 76 ¶ 22]. On January 17, 2020, the nursing staff performed the lab work and granted Plaintiff's request for a higher dose of Pepcid. *Id*. ¶¶ 23–24.

On February 10 and 11, 2020, Plaintiff submitted medical requests to see an outside specialist for his gastrointestinal issues. *Id*. ¶ 25. He was seen by Dr. Silverman on February 11, 2020, and he informed Dr. Silverman that he was still experiencing blood in his stool and loose stool. *Id*. ¶ 26. Dr. Silverman ordered additional lab work and advised Plaintiff that, per the Jail's policy, he would have to prepay to see an outside specialist. *Id*. ¶¶ 26, 65; [ECF No. 86 ¶ 14]. Plaintiff claims that Dr. Silverman told Plaintiff at this meeting that he "wasn't going to further evaluate Plaintiff's complaints." [ECF No. 86 ¶ 14]. It is undisputed, however, that on February 18, 2020, Dr. Silverman reviewed Plaintiff's lab work and noted that Plaintiff's blood count had dropped. [ECF No. 76 ¶ 27]. Dr. Silverman then arranged for Plaintiff to see an outside gastrointestinal specialist. *Id*.

Plaintiff had his first appointment with the outside specialist on March 3, 2020. *Id*. ¶ 29. The specialist instructed the Jail's medical staff to order further tests and arrange a colonoscopy. *Id*. On March 25, 2020, per the specialist's orders, Plaintiff was transported for an ultrasound of his liver. *Id*. ¶ 31. The following day, Nurse Jones Chambliss spoke to the specialist's office and arranged for Plaintiff to have a colonoscopy on April 10, 2020. *Id*. ¶ 32. On April 9, 2020, Plaintiff was moved to the medical unit to prepare for his colonoscopy. *Id*. ¶ 36.

Plaintiff received his colonoscopy on April 10, 2020, and on April 14, 2020, the results revealed that Plaintiff had chronic proctitis. *Id*. ¶¶ 37–38. The specialist prescribed Lialda and saw Plaintiff for a follow-up appointment on June 3, 2020. *Id*. ¶¶ 37, 41. At this follow-up visit, Plaintiff advised the specialist that he had been taking four tablets of Lialda per day as prescribed for three

weeks, but the Jail had decreased it to two tablets per day for the past two weeks. *Id*. ¶ 41. Nonetheless, Plaintiff told the specialist that his symptoms had improved; his rectal bleeding was resolved and he was having regular formed bowel movements. *Id*. Plaintiff also advised the specialist that he was receiving 1–2 doses of Metamucil per day. *Id*. The specialist told Plaintiff to continue his current regimen and follow-up in six months. *Id*. The specialist also prescribed iron supplements, but Dr. Silverman discontinued these after lab results revealed that Plaintiff's iron levels were elevated. *Id*. ¶¶ 43, 45.

On November 23, 2020, Nurse Jones Chambliss scheduled Plaintiff's six-month follow-up appointment with the specialist. *Id*. ¶ 47. Plaintiff was then seen by the specialist on December 15, 2020. *Id*. ¶ 48. Medical records reflect that Plaintiff was doing well on his regimen of Lialda and a high fiber diet; his bowel pattern was normal, and he had no abdominal pain. *Id*. The specialist ordered a follow-up in one year. *Id*.

On December 22, 2020, Nurse Jones Chambliss and Dr. Silverman discussed Plaintiff's lab results and noted that his iron was low. *Id*. ¶ 49. They reordered iron supplements for Plaintiff as well as a Vitamin C supplement. *Id*.

On April 7, 2021, Plaintiff submitted a medical request stating that the medication prescribed by the specialist was no longer working and his symptoms had returned. *Id*. ¶ 54. Plaintiff requested another appointment with the specialist and the nursing staff placed him on the "MD list" for April 20, 2021. *Id*. Dr. Silverman then ordered labs to be drawn on April 20, 2021. *Id*. ¶ 55. On May 2, 2021, Plaintiff submitted a grievance again requesting to see the outside specialist. *Id*. ¶ 56. Plaintiff was finally seen by the specialist on July 6, 2021, at which time he reported a recurrence of rectal bleeding but no diarrhea nor abdominal pain. *Id*. ¶ 62.

## II.     Procedural History

On July 27, 2021, Plaintiff filed a Complaint under 42 U.S.C. § 1983, alleging that Nurse Jones Chambliss and Dr. Silverman were deliberately indifferent to his serious medical needs, violating his rights under the Fourteenth Amendment. [ECF No. 1]. The Court screened the Complaint under 28 U.S.C. § 1915(e) allowed it to proceed. [ECF No. 5]. Plaintiff then amended his complaint three times, adding Primary Care of Treasure Coast, Inc., and Cleveland Clinic Indian River Hospital as Defendants. *See* [ECF Nos 26, 32, 42-1]. The Court dismissed the two new Defendants but allowed the Third Amended Complaint to proceed against Nurse Jones Chambliss and Dr. Silverman. *See* [ECF No. 50]. Defendants then filed the instant Motion for Summary Judgment, arguing that they provided adequate medical care to Plaintiff. [ECF No. 77].

## DISCUSSION

### I.     Summary Judgment Standard

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.

2004). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## II. Deliberate Indifference to Serious Medical Needs

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment that they receive while in prison. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Technically, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees." *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing *Snow ex rel. Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1268 (11th Cir.2005)). "However, the standards under the Fourteenth Amendment are identical to those under the Eighth. *Id.* (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115 (11th Cir.2005)). Therefore, even though Plaintiff was a pretrial detainee when the relevant events occurred, the Court will analyze whether Defendants' actions violated the Eighth Amendment.

Deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brennan v. Headley*, 807 F. App'x 927, 934 (11th Cir. 2020) (per curiam) (citing *Estelle*, 429 U.S. at 104). However, "the Constitution doesn't require that the medical care provided to prisoners be 'perfect, the best obtainable, or even very good.'" *Keohane v. Sec'y, Fla. Dep't of Corr.*, 952 F.3d 1257, 1266 (11th Cir. 2020) (quoting *Harris v. Thigpen*, 941 F.2d 1245, 1510 (11th Cir. 1991)). "Medical treatment violates the Eighth

Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505. "A simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment fails to support a claim of cruel and unusual punishment" under the Eighth Amendment. *Id*.

To prevail on an Eighth Amendment deliberate indifference claim, Plaintiff must demonstrate: (1) an objective component by showing he has a serious medical need; and (2) a subjective component by showing the prison official acted with deliberate indifference to that need. *See Estelle*, 429 U.S. at 104–05; *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). Plaintiff must also present evidence of causation between Defendants' indifference and his injury. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). Defendants do not dispute that Plaintiff's condition qualifies as a "serious medical need." Thus, the dispute is whether Defendants were deliberately indifferent to that serious medical need.

"To establish deliberate indifference, a plaintiff must show that the defendant had: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'" *Wright v. Langford*, 562 F. App'x 769, 778 (11th Cir. 2014) (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008)). "[A]n official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County,* 116 F.3d 1419, 1425 (11th Cir. 1997). However, negligence in diagnosing or treating a medical condition, including "an inadvertent failure to provide adequate medical care," does not state a valid claim for deliberate indifference. *Estelle*, 429 U.S. at 105–06. Consequently, allegations of medical malpractice or

negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. *Id.* at 106.

There is no dispute that Defendants had subjective knowledge of Plaintiff's condition. As explained below, however, both Defendants took numerous steps to address Plaintiff's condition. Therefore, Plaintiff has failed to show that either Defendant was deliberately indifferent to his serious medical needs.

### A. Nurse Rosemary Jones Chambliss

To show that Nurse Jones Chambliss was deliberately indifferent, Plaintiff focuses on his January 13, 2020 meeting with her, at which she asked him whether his condition might be the result of homosexual activity. *See* [ECF No. 85 at 10–12]. He argues that Nurse Jones Chambliss displayed deliberate indifference at this meeting by not addressing his sick call complaints and instead questioning his sexual activity. *Id*. According to Plaintiff, this question was discriminatory and meant to "humiliate and detour the plaintiff from seeking medical treatment." *Id*. at 10.

Nurse Jones Chambliss' question alone, however, cannot establish deliberate indifference because it is undisputed that she provided medical attention to Plaintiff. *See Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) ("when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation."); *Anthony v. Alabama*, No. 5:16-cv-00164-LSC-SGC, 2016 WL 8469187, at *4 (N.D. Ala. Dec. 14, 2016), *adopted*, 2017 WL 958407 ("[Defendant's] comment, standing alone, does not rise to the level of a constitutional violation. The plaintiff does not allege that defendant [ ] denied him access to medical care or interfered with his medical care in any way."). Jones Chambliss answered Plaintiff's many sick call requests, arranged Plaintiff's appointments with an outside specialist as well as his ultrasound and colonoscopy, provided medication to Plaintiff including Metamucil, Imodium and Pepcid, and

reviewed Plaintiff's lab results with Dr. Silverman. Construed in a light most favorable to Plaintiff, Jones Chambliss' comment showed insensitivity towards his painful condition. But it is undisputed that Jones Chambliss otherwise provided Plaintiff with constitutionally adequate medical care. Thus, her question about Plaintiff's sexual activity does not, by itself, establish deliberate indifference.[2]

Plaintiff also argues that Nurse Jones Chambliss displayed deliberate indifference by giving him only Metamucil, which was insufficient to treat his condition. *See* [ECF No. 86 ¶ 5]. As set forth in the previous paragraph, however, Nurse Jones Chambliss did much more than that. Yet even if she gave Plaintiff only Metamucil, she would still not be liable for deliberate indifference because it is undisputed that Plaintiff received considerable medical attention from others, including Dr. Silverman, the outside specialist, and other nurses on the Jail's medical staff. *See Owens v. Sec'y of Fla. Dep't of Corr.*, 812 F. App'x 861, 869 (11th Cir. 2020) (finding that prison doctor was not deliberately indifferent where the plaintiff "received extensive medical care" at the prison, including "a number of examinations and consultations by a range of healthcare providers."). Moreover, the Metamucil (or other fiber supplements) that Nurse Jones Chambliss provided did help Plaintiff's condition, and the specialist agreed that Plaintiff should continue his fiber regimen in addition to the prescribed medication. *See* [ECF No. 76 ¶¶ 10, 41]. Accordingly, there is no genuine dispute that Nurse Jones Chambliss' medical care did not violate the Eighth Amendment.

---

[2] Plaintiff also seems to argue that Nurse Jones Chambliss violated his constitutional rights by not reporting his alleged sexual activity to her superiors, in accordance with Jail policy and Florida law. *See* [ECF No. 85 at 11–12]. Plaintiff's argument is unclear, but in any event, it is immaterial whether Nurse Jones Chambliss reported Plaintiff's alleged sexual activity. Plaintiff does not explain how her failure to report behavior that he denies had any effect on his medical care.

### B. Dr. Gary Silverman

Plaintiff contends that Dr. Silverman exhibited deliberate indifference during their second meeting, on February 11, 2020, when Dr. Silverman purportedly told Plaintiff that he "wasn't going to further evaluate Plaintiff's complaints" and that if Plaintiff wanted to see an outside specialist, he would have to pay for it in advance. [ECF No. 86 ¶ 14]. It is undisputed, however, that Dr. Silverman provided treatment to Plaintiff after this visit. One week later, on February 18, 2020, Dr. Silverman reviewed Plaintiff's lab results and arranged for him to see an outside specialist. *See* Def.'s Ex. C, [ECF No. 76-3 at 22]. Dr. Silverman continued to review Plaintiff's lab results after the specialist's visit, monitoring Plaintiff's iron levels. [ECF No. 76 ¶ 45]. He then ordered lab tests a year later, in April of 2021, and performed a physical examination of Plaintiff in May of 2021. *Id*. ¶¶ 55–56. Thus, Dr. Silverman's alleged comment to Plaintiff at that February 11, 2020 meeting is immaterial.

Dr. Silverman was not deliberately indifferent by advising Plaintiff that he needed to prepay to see an outside doctor. Dr. Silverman was merely informing Plaintiff of the Jail's policy for seeking outside care. *See* [ECF No. 76 ¶ 65]. It is not clear from the record whether Plaintiff did prepay, but it is undisputed that Plaintiff received multiple appointments with the outside specialist. Thus, the prepayment requirement did not violate Plaintiff's constitutional rights, as there is no evidence that it prevented—or even delayed—Plaintiff's treatment by an outside specialist. *See Jones v. Corizon*, No. 2:12-CV-786-WHA, 2015 WL 5013954, at *17 (M.D. Ala. Aug. 18, 2015) ("The charging of a co-payment for medical treatment initiated by an inmate, standing alone, does not violate the Constitution"); *Mathis v. Glover*, No. 1:05-CV-1084-MHT, 2008 WL 3929797, at *9 (M.D. Ala. Aug. 25, 2008) ("[The plaintiff] does not allege that medical or jail personnel denied him treatment because of his inability to pay the fee; rather, the medical

records and other evidentiary materials demonstrate [he] received medical treatment regardless of his ability to provide a co-payment for such treatment. Thus, [the plaintiff] has failed to allege a violation of his constitutional rights"); *Morris v. Livingston*, 739 F.3d 740, 748–49 (5th Cir. 2014) (Plaintiff "does not allege that he was denied access to medical care because of his inability to pay the fee, or that provision of medical care was delayed as a result of his inability to pay.").

Further, while the record shows that the Jail decreased Plaintiff's prescription medication by half for two weeks around late-May of 2020—after providing him the full dose for three weeks from April to May of 2020—there is no evidence that Dr. Silverman ordered this reduction himself. Moreover, it is undisputed that despite the two-week reduction in medication, Plaintiff's condition had significantly improved when he saw the specialist for a follow-up on June 3, 2020. *See* [ECF No. 76 ¶ 41]. Plaintiff does not argue that Dr. Silverman was deliberately indifferent by reducing his medication, and the record establishes that he was not.

Finally, there is no evidence that Dr. Silverman displayed deliberate indifference by delaying Plaintiff's treatment. "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999). Delayed medical treatment rises to the level of deliberate indifference when "it is apparent that delay would detrimentally exacerbate the medical problem, the delay actually seriously exacerbates the problem, and the delay is medically unjustified." *Taylor v. Adams*, 221 F.3d 1254, 1259–60 (11th Cir. 2000) (quotation and citation omitted). Thus, to prove that a delay in medical treatment violated the Constitution, the plaintiff

"must place verifying medical evidence in the record to establish the detrimental effect of delay[.]" *Hill*, 40 F.3d at 1188.

First, Plaintiff argues that Dr. Silverman delayed referring him to an outside specialist. *See* [ECF No. 85 at 16–17]. The record shows, however, that Plaintiff first requested to see an outside specialist on February 10, 2020, and that Dr. Silverman made the referral eight days later, on February 18, 2020, upon reviewing Plaintiff's labs and finding that Plaintiff's blood count had dropped. *See* Def.'s Ex. C, [ECF No. 76-3 at 19–22]. Thus, Dr. Silverman promptly referred Plaintiff to a specialist once he found it medically necessary. *See Corpus v. Teion-Wells*, No. 2:08-cv-552-FTM-36-DNF, 2010 WL 1793412, at *7 (M.D. Fla. May 5, 2010) (doctor's delay in referring a prisoner to a specialist did not violate the Eighth Amendment because the doctor made the referral when he found it medically necessary, and there was no evidence that the delay had a detrimental effect on the prisoner's condition). Plaintiff was then seen by the specialist two weeks later, on March 3, 2020. *See* [ECF No. 76 ¶ 29]. Even if this period could be considered a delay, it does not evince deliberate indifference because there is no evidence that the delay exacerbated Plaintiff's condition. His proctitis was chronic and non-life threatening, and Defendants were providing ongoing medical attention at the time. *Cf. Hill*, 40 F.3d at 1187 (delays in medical care may violate the constitution when the medical need "involve[s] life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem").

Second, while a dispute exists as to whether Dr. Silverman performed a rectal examination during Plaintiff's first visit in January 2020 or during his second visit in February 2020, this dispute is immaterial. Plaintiff ultimately received the exam, and he cannot show that a one month delay was anything more than a medical judgment or, at worst, negligence. *See Harris*, 941 F.2d at 1505 ("a simple difference in medical opinion between the prison's medical staff and the inmate as to

the latter's diagnosis or course of treatment [does not] support a claim of cruel and unusual punishment"); *Estelle*, 429 U.S. at 97 ("the failure . . . to use additional diagnostic techniques does not constitute cruel and unusual punishment but is at most medical malpractice"). It is undisputed that Dr. Silverman ordered lab tests at this first visit, which demonstrates that he sought to diagnose Plaintiff's condition and was not ignoring it. And again, Plaintiff was receiving other treatment at this time, including fiber supplements and Imodium. *See* [ECF No. 76 ¶ 26]. Moreover, there is no evidence that this delay had a detrimental effect on Plaintiff's condition; it was the lab results, not the rectal exam, that prompted Dr. Silverman to refer Plaintiff to the specialist who ultimately diagnosed Plaintiff's condition. *Hill*, 40 F.3d at 1188; *see also Goebert*, 510 F.3d at 1329 ("The question is whether that delay worsened [the plaintiff's] condition . . ."). Thus, even if Dr. Silverman did delay Plaintiff's rectal exam, there is no evidence that the delay amounted to deliberate indifference.

And third, while Plaintiff requested a follow-up appointment with the specialist in April 2021 but did not see him until July 2021, there is no evidence to suggest that Dr. Silverman was responsible for this delay, and Plaintiff does not argue that this delay constituted deliberate indifference. In sum, Plaintiff has produced no evidence showing that Dr. Silverman deliberately delayed his treatment or that any delays had a detrimental effect on his condition. Accordingly, Dr. Silverman was not deliberately indifferent to Plaintiff's serious medical needs.

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment [ECF No. 77] is **GRANTED**.

2. The Court will enter a separate judgment.

3. This action is **CLOSED**, and all pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of February, 2023.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc: **Richard Justin Rivera**, *pro se*
E10529
Wakulla Correctional Institution
Inmate Mail/Parcels
110 Melaleuca Drive
Crawfordville, FL 32327

Counsel of record via CM/ECF